UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAVANNAH P. LARAMIE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 4:22-CV-107 ACL ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM**

Plaintiff Savannah P. Laramie brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Laramie's severe impairments, she was not disabled as she was capable of performing jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

**I.  Procedural History**

Laramie protectively filed her application for benefits on September 30, 2019.  (Tr. 207-

09.)  She claimed she became unable to work on September 30, 2019, due to multiple sclerosis ("MS") and bipolar depression.  (Tr. 252.)  Laramie was 28 years of age at her alleged onset of disability date.  (Tr. 24.)  Her application was denied initially.  (Tr. 149-53.)  Laramie's claim was denied by an ALJ on April 6, 2021.  (Tr. 15-26.)  On November 30, 2021, the Appeals Council denied Laramie's claim for review.  (Tr. 1-4.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

In this action, Laramie first argues that the RFC "is not supported by substantial evidence."  (Doc. 17 at 3.)  She next argues that the "decision fails to properly evaluate opinion evidence."  Id. at 5.  Laramie also contends that her "medically determinable impairment of interstitial cystitis is severe."  Id. at 10.

## II. The ALJ's Determination

The ALJ first found that Laramie has not engaged in substantial gainful activity since her application date of September 30, 2019.  (Tr. 17.)  In addition, the ALJ concluded that Laramie had the following severe impairments: MS and bipolar disorder.  Id.  The ALJ found that Laramie did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 18.)

As to Laramie's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ropes, ladders or scaffolds; only occasionally climb ramps and stairs; stand and/or walk up to 1 hour at a time for a total of 6 hours in an 8-hour workday; sit for at least 2 hours at a time for a total of 8 hours in an 8-hour workday; must change positions briefly every hour while remaining on task; and can only occasionally stoop, kneel, crouch and crawl.  She is limited to the ability to learn, remember and carry out simple, routine tasks; use

> reason and judgment to make simple, routine work-related decisions; work at and maintain appropriate and consistent pace while performing simple, routine tasks; complete simple, routine tasks in a timely manner; and ignore or avoid distractions while performing simple, routine tasks.  The claimant is limited to only gradual changes in job setting and duties; and is able to work close to or with others without interrupting or distracting them while performing simple, routine tasks; sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and work a full day without needing more than the allotted number or length of rest periods (breaks) during the day while performing simple, routine tasks.

(Tr. 20.)

The ALJ found that Laramie was unable to perform any of her past relevant work, but was capable of performing other work existing in significant numbers in the national economy. (Tr. 24.)   The ALJ therefore concluded that Laramie was not under a disability, as defined in the Social Security Act, since September 30, 2019.   (Tr. 25.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on September 30, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 26.)

### III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

  Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*  Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*  If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

Laramie first argues that the ALJ erred in determining her RFC.  Laramie further argues that, in formulating her RFC, the ALJ failed to properly evaluate the medical opinion evidence.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that Laramie had the RFC to perform light work, with a significant number of additional physical and mental limitations. (Tr. 20.) In making this determination, the ALJ evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under the revised Social Security regulations,[1] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2). Instead, the ALJ

---

[1] The new regulations are applicable to Laramie's claims because she filed her appeal after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

must assess the persuasiveness of all medical opinions and prior administrative medical findings[2] using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.  See 20 C.F.R. § 404.1520c.

Laramie argues that the ALJ did not properly articulate the "supportability" and "consistency" factors when evaluating the medical opinion evidence.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors ... in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)).  ALJs need not explain in their decision how they considered the other factors.  20 C.F.R. § 404.1520c(b)(2).

---

[2]"Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, abut medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.  81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

The record contains opinions from four state agency consultants, and two treating providers. The ALJ first discussed the prior administrative findings regarding Laramie's mental limitations. She stated that the state agency psychological consultant Martin Isenberg, Ph.D., provided an opinion in January 2020, and Kim Stalker, Psy.D., provided an opinion in February 2020. (Tr. 22, 124-25, 137-38) Drs. Isenberg and Stalker both found that Laramie has no limitation in her ability to understand, remember, or apply information; no limitation in interacting with others; no limitation in her ability to concentrate, persist, or maintain pace; and mild limitation in adapting and managing herself. *Id.* They therefore found that Laramie did not have a severe mental impairment. The ALJ stated these opinions "are not persuasive" because the records support a mild limitation in interacting with others, and a moderate limitation in Laramie's ability to concentrate, persist, or maintain pace. (Tr. 22.)

Because the ALJ found that the record supported *greater* mental limitations than found by the state agency psychological consultants, any error in the ALJ's failure to elaborate on her analysis of these prior administrative findings was harmless.

The ALJ next discussed the assessments of state agency medical consultants James Schell, M.D., and Donna McCall, D.O. *Id.* Drs. Schell and McCall both found that Laramie had the RFC for sedentary exertional work, except she can only occasionally lift, carry, push, or pull ten pounds and frequently less than ten pounds; stand or walk a total of two hours and sit six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme heat and workplace hazards such as moving machinery and unprotected heights. (Tr. 22, 126-28, 139-41.) The ALJ found these opinions "somewhat

persuasive," as they were "somewhat supported by, and consistent with, the record as a whole, as more fully discussed above." (Tr. 22.)

Laramie argues that the ALJ's statement does not satisfy the requirements of the regulations and provides no understanding of what parts of the opinions are "somewhat" supported by and consistent with the record. The undersigned agrees.

An "ALJ's sprinkling of the words 'support' and 'consistent' in her cursory treatment of [medical] opinions is insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered these factors in determining the persuasiveness of a medical opinion." *Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Lucus*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). "No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence." *Martini*, 2022 WL 705528 at *5; *see also Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination). The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

Unlike the opinions from the state agency psychological consultants regarding Laramie's mental impairments, Drs. Schell and McCall both found Laramie was more limited than found by the ALJ. Specifically, they expressed the opinion that Laramie was capable of only a limited range of *sedentary* work, compared to the ALJ's finding that Laramie could perform a range of light work. The ALJ's analysis of the medical consultants' opinions consists of the one sentence that they were somewhat supported by and consistent with the record "as more fully discussed above." (Tr. 22.) The ALJ, however, did not provide a more detailed explanation anywhere in her opinion as to why Laramie was capable of performing the exertional requirements of light work.

The ALJ's analysis of Laramie's treating providers' opinions suffers from the same flaws. Gregory Wu, M.D., authored a Multiple Sclerosis Medical Source Statement on July 20, 2020. (Tr. 702-05.) Dr. Wu indicated he had been treating Laramie for MS since 2013, and had diagnosed MS due to an abnormal MRI and abnormal neurologic exam. (Tr. 702.) Laramie exhibited the following symptoms: chronic fatigue, balance problems, weakness, difficulty remembering, sensitivity to heat, unstable walking, muscle spasticity, and numbness. *Id.* Her last exacerbation of MS occurred in August 2018, with blurring of vision in her left eye. (Tr. 703.) Laramie complained of fatigue that is best described as lassitude, rather than fatigue of motor function, which was typical of MS patients. *Id.* Dr. Wu indicated that Laramie could walk less than one city block without rest or severe pain; could sit for thirty minutes at a time, and a total of about four hours in an eight-hour workday; could stand for five minutes at a time, and a total of less than two hours; requires a job that permits shifting positions at will from standing, sitting, and walking; and requires unscheduled breaks at least every thirty minutes due to chronic fatigue, pain, and numbness. (Tr. 703.) He found that Laramie could lift less than

ten pounds and could lift this amount of weight only rarely; could rarely twist; could never stoop, crouch, or squat; could reach her arms in front of her body 25 percent of the time during a workday; could reach overhead, grasp with her hands, and use her fingers for fine manipulations only 10 percent of the workday; would be off task 25 percent or more of the workday; was capable of only low stress work; would have good days and bad days; and would miss work more than four days per month.  (Tr. 704-05.)  Dr. Wu stated that Laramie also experiences "intermittent issues such as paresthesias, cognitive dysfunction, vision issues, tremor, spasms, in addition to severe fatigue, limit function in a fluctuating manner."  (Tr. 705.)

As to Dr. Wu's opinion, the ALJ stated that it is "not persuasive," because "it is extreme and not supported by, nor consistent with, the record as a whole, discussed above."  (Tr. 23.)  She explained that Laramie's MS "has few flares and is generally stable, supporting greater capability, as discussed above."  *Id.*

Earlier in her opinion, the ALJ stated that the medical evidence shows that Laramie complained of the following symptoms beginning in at least October 2019 through January 2020: incoordination; difficulty walking and with buttons; numbness, tingling, and pain in her hand and feet; muscle spasms in her legs; worsening memory and processing speed; variable mood with mixed depression, anxiety, and anger; moderate fatigue; poor sleep; frequent and hesitant urination; and diarrhea.  (Tr. 21-22.)  The ALJ noted that Laramie was being treated with multiple medications, including psychotropic medications, MS medications, and medications to treat urinary tract infections.  (Tr. 22.)  On examination, Laramie had normal coordination; full muscle strength, except in January 2020 with an increased tremor; normal muscle tone; normal sensation and reflexes; an impaired, wide-based, short-stride, and cautious station and gait, with impaired heel, toe, and tandem walking and hopping; and testing showing a

moderate sway/fall in October 2019, and a mild sway in January 2020.  *Id*.  The ALJ noted that Laramie underwent monthly intravenous Tysabri[3] infusions from at least October 2019 through September 2020, and that her MS was noted to be stable on October 22, 2019, January 16, 2020, and April 2, 2020.  (Tr. 22, 548, 641, 658.)  On May 2, 2020, Laramie was noted to be doing well, although she reported more twitching and spasms.  (Tr. 22.)  An additional medication was prescribed at that time.  *Id*.  Finally, the ALJ stated that Laramie was regularly encouraged to exercise and adhere to a balanced diet.  *Id*.

First, the fact that Laramie "has few flares and is generally stable," is not inconsistent with Dr. Wu's opinions regarding Laramie's limitations.  Despite finding Laramie's MS stable on the noted visits, Dr. Wu consistently noted the presence of MS symptoms on examination, as indicated in the ALJ's summary of the medical evidence.  Further, the ALJ's explanation that Dr. Wu's opinion "is extreme and not supported by, nor consistent with, the record as a whole, discussed above," is insufficient to satisfy the Regulation's directive of explanation regarding supportability and consistency.  *See Martini*, 2022 WL 705528 at *5 ("finding ALJ's statement that opinion was "consistent with the record as a whole" insufficient"); *Post v. Kijakazi*, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (finding ALJ's statement that opinion was "consistent with the claimant's medical record, as more fully discussed above" insufficient).  Dr. Wu had been treating Laramie for her MS since 2013.  He is a neurologist and specialist in MS.  The Court finds that the ALJ erred in analyzing the persuasiveness of Dr. Wu's opinion.

---

[3]Intravenous Tysabri is used to treat MS.  It is not a cure for MS, but it is thought to help by preventing the immune system from attacking the nerves in the brain and spinal cord.  It helps decrease the number of episodes of worsening symptoms and may prevent or delay disability.  *See* WebMD, http://www.webmd.com/drugs (last visited March 17, 2023).

The final medical opinion discussed is that of Laramie's treating psychiatrist, Azfar Malik, M.D.   (Tr. 775-77.)   Dr. Malik authored a Medical Source Statement-Mental on August 11, 2020.  *Id.*   He expressed the opinion that Laramie had moderate limitations in her ability to concentrate, persist, and maintain pace; could perform in a setting where supervisors provide simple instructions for non-detailed tasks with no more than four supervisor contacts per day; could perform in a setting where contact with the general public is only casual and infrequent; she would be late to work or need to leave work early twice a month due to psychologically-based symptoms; and she would miss work two days a month due to her anxiety and bipolar disorder.   *Id.*   The ALJ found that Dr. Malik's opinion is "not persuasive" because "it is not supported by, nor consistent with, the record as a whole, which fails to show that the claimant's mental health issues are not controlled with treatment, as more thoroughly discussed above." (Tr. 23.)

The ALJ's evaluation of Dr. Malik's opinion, like her analysis of the other opinion evidence, is conclusory and insufficient under the Regulations.   Dr. Malik is a treating provider and a specialist in psychiatry.

The Court finds that the ALJ erred in analyzing the persuasiveness of the medical opinion evidence.   This error affected the ALJ's RFC determination, which renders it without the support of substantial evidence.   Because remand is required for revaluation of the opinion evidence and RFC, the Court will not rule on Laramie's remaining arguments.  *See, e.g., Hirner*, 2022 WL 3153720, at *10.   The Court, however, notes that the ALJ on remand should consider whether Laramie's interstitial cystitis is a severe impairment, and how this impairment affects her RFC.

**Conclusion**

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order.   Upon remand, the ALJ must properly evaluate the persuasiveness of the medical opinion evidence and formulate a RFC supported by substantial evidence.

                                          /s/ Abbie Crites-Leoni
                                          ABBIE CRITES-LEONI
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of March, 2023.